UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------   X
                                             :

IN RE VITAMIN C ANTITRUST LITIGATION   :

                                             :          06-MD-1738 (BMC) (JO)
------------------------------------------------------------   :

                                             :

This document relates to:                        :

                                             :

ANIMAL SCIENCE PRODUCTS, INC., et al.,   :      **MEMORANDUM**
                                             :      **DECISION AND ORDER**

                     Plaintiffs,         :

                                             :      06-CV-149

v.                                         :      06-CV-987
                                             :      06-CV-988

HEBEI WELCOME PHARMACEUTICAL CO.   :
LTD., et al.,                               :

                                            :

                     Defendants.       :

---------------------------------------------------------------   X

**COGAN**, District Judge.

Presently before me is a motion by the Indirect Purchaser Plaintiffs ("plaintiffs") for

leave to file a second amended class action complaint in this multi-district litigation.  Most of the

proposed amendments are unopposed, but for one that would add an additional defendant, a

minority shareholder of a present defendant.  As to this proposed additional defendant, the main

question is whether, under Federal Rule of Civil Procedure 15(c), the addition of this defendant

will relate back to the prior pleadings for purposes of the applicable statutes of limitations and

thus save plaintiffs' proposed claim against this new defendant from futility.  I answer the

question negatively as to both the federal and state rules governing the doctrine of relation-back,

except that as to Massachusetts, for which the amendment shall be allowed.

**BACKGROUND**

As reflected by the docket number, these cases have an extensive history.  Direct and indirect purchasers of Vitamin C brought a number of class actions against a group of Chinese companies beginning in 2005.  The basic allegation was that these companies fixed prices of Vitamin C for the period 2001 through 2006 in violation of, depending on the particular complaint, the Clayton Act, 15 U.S.C. § 12 et seq., or various state antitrust and consumer protection statutes.  The Judicial Panel on Multi-District Litigation transferred all of the actions here for pretrial proceedings before the late Judge Trager.

The direct purchaser plaintiffs and the indirect purchaser plaintiffs each filed a consolidated class action complaint.  However, two of the indirect purchaser plaintiffs were not included in that consolidation.  Those are the Philon case, 06-cv-987, which alleged various California state law claims, and the Audette case, 06-cv-988, which alleged two claims under Massachusetts law.  The consolidated action is the Keane case, 06-cv-149, which alleged violations of state law of another 21 states.  The proposed second amended class action complaint would consolidate all three of these cases, and slightly reduce the number of states included in the present Keane action.

This motion to amend seeks to add North China Pharmaceutical Group Corporation ("North China"), a minority shareholder of defendant Hebei Welcome Pharmaceutical Co. ("Hebei"), as a defendant.  North China was added to the direct purchaser consolidated complaint in January 2007.  North China was never added to any of the indirect purchaser complaints, however, even though those actions brought claims against Hebei.  In November 2008, counsel for both the direct and indirect purchaser plaintiffs as well as counsel for all defendants entered into a stipulation to stay the indirect purchaser cases pending entry of final

judgment in the direct purchaser cases (the "stay stipulation").  As recited in the stay stipulation, the parties believed that their claims against those defendants they had sued would likely be resolved or at least simplified by the judgment in the direct purchaser action.  Significantly, the stay stipulation did not include North China, because North China had not yet been sued by the indirect purchasers.  The stay stipulation provided that any party could seek to lift the stay upon 30 days' notice.[1]

The direct purchaser action went to trial before me in 2013.  All of the defendants besides North China and Hebei settled, two of them after commencement of trial.  The jury returned a verdict against North China and Hebei which netted out to $153 million after trebling and reduction for settlement proceeds.

The indirect purchaser plaintiffs now move to bring the Philon and Audette cases within a Second Amended Consolidated Class Action Complaint.  Aside from ministerial changes which are not opposed, they seek to add North China as a defendant, alleging "changed circumstances."

## DISCUSSION

### I.  Effect of the Stay Stipulation

Plaintiffs concede that any conceivable statutes of limitations for claims falling under the various state laws implicated by their proposed second amended complaint have run years ago. Their first argument to avoid this expiration is the stay stipulation.  They contend that the stay stipulation constituted a toll as to any claims that they might seek to assert against North China.

---

[1] It does not appear that the stipulation was ever So Ordered by Judge Trager.  However, at a status conference on December 5, 2008, which was shortly after the stipulation was filed, he stated: "I'm going to grant this application, the indirect plaintiffs, to stay that."  He then moved to other topics.  On the present motion, neither side contends that the failure to So Order the stipulation is material.

I easily reject that argument. North China was not a party to the stay stipulation because at the time the parties entered into the stay stipulation, North China was not a party to the indirect purchaser actions. Plaintiffs cite no authority suggesting how a non-party to this stipulation could be bound by it. The most plaintiffs can say is that Hebei signed the stipulation, and North China was represented by the same counsel as Hebei. That is a long way from the conclusion that North China agreed to a toll of the statute of limitations.

There is nothing in the stay stipulation that references any statutes of limitations. The absence of any such language is a further indication that the stay stipulation was intended only to affect the defendants in the indirect purchaser actions at that time, because there was no need to toll any statute of limitations as to those defendants. Nor do plaintiffs argue that North China was omitted from the stipulation by mistake, such that the stipulation should be reformed due to mutual misunderstanding between the parties. The stay stipulation cannot save plaintiffs' time-barred claims against North China.

**II. Rule 15(c)(1)(C) – Federal relation-back**

Plaintiffs' more substantial argument is that the proposed amendment "relates back" to the date on which they filed their first consolidated amended complaint – November 1, 2006 – and therefore is within the applicable statutes of limitations. This argument attracts two provisions of Federal Rule of Civil Procedure 15, one involving federal law and the other involving state law. The federal relation-back provision is Federal Rule of Civil Procedure 15(c)(1)(C). It provides that an amended pleading relates back to the date of the original pleading when:

> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided

by Rule 4(m) for serving the summons and complaint, the party to be brought in
by amendment:

(i) received such notice of the action that it will not be prejudiced in
defending on the merits; and

(ii) knew or should have known that the action would have been brought
against it, but for a mistake concerning the proper party's identity.

The issue framed by plaintiff's argument is whether the final clause – the proposed party "knew

or should have known that the action would have been brought against it, but for a mistake

concerning the proper party's identity" – refers not only to the substitution of a proper party for

an erroneously named party, but also to the addition of a new party when all of the parties

previously named were themselves proper parties.  A useful way of looking at this is to break the

situations down into two categories.  The first category, "wrong party" cases, is where a plaintiff

has sued the wrong party or used the wrong name and seeks to amend to substitute the right party

or the right name.  See Reed v. U.S. Bancorp, No 12-cv-344, 2013 WL 1249231 (E.D. Tenn.

Mar. 26, 2013).  The second category, "additional party" cases, is where the defendants

originally sued are indeed exposed to liability on the theories alleged, but the plaintiff has

omitted an additional party against whom the plaintiff also could have stated a claim.  See Turner

v. Nicoletti, No. 12-1855, 2013 WL 3989071 (W.D. Pa. Aug. 2, 2013).

It is clear enough that plaintiffs here made a tactical "mistake" in the colloquial sense.

What they should have done was to either amend their complaint to add North China at the same

time (or earlier) that the direct purchaser plaintiffs did, back in January 2007, or at least add

North China to the November 2008 stipulation.  But Rule 15(c)(1)(C) does not encompass just

any mistake.  It requires a mistake "concerning *the proper party's identity*." (Emphasis added.)

As a matter of plain language, this provision would appear to include only "wrong party" cases,

and not "additional party" cases.  This is because the "mistake" has to "concern[]" the "identity"

of the "proper party[]."  In an "additional party" case like this one, there generally will be no "mistake concerning" the proper party's "identity."  The plaintiff has sued the right defendant, and simply neglected to sue another defendant who might also be liable.  If the drafters of Rule 15 had meant to allow relation back in this situation, they could have easily done so.[2]

Not only does the plain language of the provision support this interpretation, but other provisions of the Rule confirm it.  The time period within which the proposed party must have learned of its mistaken omission is measured from the filing of the original pleading that omitted it – usually, 180 days from filing, pursuant to Rule 4(m).  I do not see how, where a proper party like Hebei has been sued, an additional party like North China would realize that a "mistake" has been made in failing to name it.

There can be all kinds of reasons for not naming an additional party even if there is some basis of potential liability.  Not every party with some exposure would know that a mistake had been made in not suing it.  The instant case is a particularly good example of that, because North China's exposure has always been more attenuated than the other defendants.  In the direct purchaser action, North China fought vigorously to show that whatever the other defendants did, including Hebei, it was not involved in the alleged conspiracy.

---

[2] Further, this interpretation is consistent with the Advisory Committee notes to Rule 15(c), which address the concept of "wrong party" cases without ever mentioning "additional party" cases:

> An intended defendant who is notified of an action within the period allowed by Rule 4(m) for service of a summons and complaint may not under the revised rule defeat the action on account of a defect in the pleading with respect to the defendant's name, provided that the requirements of clauses of (A) and (B) have been met. If the notice requirement is met within the Rule 4(m) period, a complaint may be amended at any time *to correct a formal defect such as a misnomer or misidentification*.

Notes of the Advisory Committee on Rules, 1991 Amendment to Rule 15(c)(3) (emphasis added).  Note that this comment refers to an old version of Rule 15(c); the former Rule 15(c)(3)(A) became the current Rule 15(c)(1)(C)(i) in the 2007 general restyling of the Rules.

It cannot be the case that the mere threat of exposure during the first six months after filing effects an indefinite toll, in this case seven years, until the plaintiff gets around to amending.  In short, my view is that Rule 15(c)(1)(C) is addressed to the situation where a plaintiff has sued the wrong party, and the right party, reasonably aware of the error, sits on the sidelines while the statute of limitations runs out.

There may be cases where deviation from this general rule is appropriate.  But this is not that case.  Here, the most that plaintiffs can say is that they were unaware of North China's participation in the alleged cartel when they filed their first consolidated amended complaint on November 1, 2006.  In the Second Circuit, however, lack of knowledge does not constitute a "mistake" for relation back purposes.  Barrow v. Wethersfield Police Dep't, 66 F.3d 466, 470 (2d Cir. 1995).

I recognize that, in the wake of the Supreme Court's decision in Krupski v. Costa Crociere S.p.A., 130 S. Ct. 2485 (2010), several district courts have questioned the continued viability of the Barrow rule and held that Rule 15(c) can be satisfied where the plaintiff "[lacked] knowledge regarding the conduct or liability" of the newly added party, even where the originally named party was proper.  See Abdell v. City of New York, 759 F. Supp. 2d 450, 457 (S.D.N.Y. 2010); see also S.A.R.L. Galerie Enrico Navarra v. Marlborough Gallery, Inc., No. 10 Civ. 7547, 2013 WL 1234937 at *6 (S.D.N.Y. Mar. 26, 2013) (citing Abdell); Roe v. Johnson, No. 07 Civ. 2143, 2011 WL 8189861, at *4 (E.D.N.Y. Aug. 12, 2011) (same).  Relying on these cases, plaintiffs stress that they were unaware of North China's "role and status in the alleged conspiracy when they filed their complaints."

I have previously held that <u>Krupski</u> did not alter the <u>Barrow</u> rule. <u>See</u> <u>Dominguez v. City of New York</u>, No. 10 Civ. 2620, 2010 WL 3419677, at *3 (E.D.N.Y. Aug. 27, 2010). As I observed in <u>Dominguez</u>,

> <u>Krupski</u> merely picks up where <u>Barrow</u> left off. <u>Barrow</u> asked whether a mistake has been committed; <u>Krupski</u> assumes the presence of a mistake and asks whether it is covered by Rule 15(c)(1)(C)(ii). Therefore, <u>Barrow's</u> holding that a lack of knowledge is not a mistake is still intact.

2010 WL 3419677, at *3. I continue to adhere to this view. The Second Circuit has recently reaffirmed <u>Barrow</u>, subsequent to the district court decisions cited above. <u>See</u> <u>Hogan v. Fischer</u>, 738 F.3d 509, 517-18 (2d Cir. 2013). Moreover, although <u>Abdell</u> and the other decisions cited relied on <u>Krupski</u>, they failed to recognize that <u>Krupski</u> was a wrong party case if ever there was one, and emphatically not an additional party case.

The holding in <u>Krupski</u> was that it doesn't matter what a plaintiff knows or should know about the proposed defendant – it is what that defendant knows that counts – and that, therefore, even a plaintiff who makes a carefully considered but ultimately wrong choice about who to sue can avail himself of Rule 15(c)(1)(C). Because <u>Krupski</u> spent so much analysis considering the proposed new defendant's knowledge that it was the party that should have been sued (and discounting the significance of the plaintiff's knowledge), it is easy to slide into the belief, as <u>Abdell</u> and its progeny did, that all that matters is what the proposed new party knows. However, the starting point for <u>Krupski</u> was a suit against the wrong party, and all of its discussion of knowledge must be seen in that context. Where a plaintiff has not mistakenly sued the wrong party, a court need not consider what a defendant knows and when the defendant knew it; the threshold requirement for Rule 15(c)(1)(C) – a "mistake concerning the proper party's identity" – has not been met. <u>See</u> <u>Turner</u>, 2013 WL 3989071 at *3 (distinguishing <u>Krupski</u> and declining relief under Rule 15(c)(1)(C) where "[p]laintiff did not identify the wrong

8

parties . . . in his Complaint despite having sufficient information available to correctly identify

them. . . . [Rather, plaintiff] has sued *additional parties for additional and different reasons*")

(emphasis in original)).

Indeed, the passage of <u>Krupski</u> excerpted by plaintiffs lends further weight to this

conclusion:

> [A] plaintiff might know that the prospective defendant exists but nonetheless
> harbor a misunderstanding about his status or role in the events giving rise to the
> claims at issue, and <u>she may mistakenly choose to sue a different defendant based
> on that misimpression.</u> That kind of deliberate but mistaken choice does not
> foreclose a finding that Rule 15(c)(1)(C)(ii) has been satisfied.

<u>Krupski</u>, 130 S. Ct. at 2494 (emphasis added).[3]  Here, plaintiffs did not "mistakenly choose to

sue" Hebei based on any "misimpression."  They correctly sued Hebei, and for whatever reason

did not sue North China as well.  As the Second Circuit noted in <u>In re Allbrand Appliance &

Television Co., Inc.</u>, 875 F.2d 1021, 1025 (2d Cir. 1989), the relation back doctrine "is designed

. . . to accommodate the statute of limitations policies that prevent stale claims from being

litigated, and permit their repose. . . .  It was not designed to provide a means either to

circumvent or to expand the limitations period."  <u>Id.</u>

The theory upon which plaintiffs rely – that they were unaware of North China's "role

and status in the alleged conspiracy" – is a familiar one, albeit moved to a new context.  Federal

courts regularly confront the issue of whether a statute of limitations should be tolled due to a

plaintiff's lack of knowledge in the context of equitable tolling, inquiry notice, and the injury

discovery rule.  <u>See generally,</u> e.g., <u>Koch v. Christie's Intern. PLC</u>, 699 F.3d 141 (2d Cir. 2012);

<u>In re Copper Antitrust Litig.</u>, 436 F.3d 782 (7th Cir. 2006).  Plaintiffs essentially seek to import a

---

[3] <u>See also</u> <u>Krupski</u>, 130 S. Ct. at 2494.  ("[A] plaintiff may know generally what party A does while misunderstanding the roles that party A and party B played in the 'conduct, transaction, or occurrence' giving rise to her claim.  <u>If the plaintiff sues party B instead of party A</u> under these circumstances, she has made a 'mistake concerning the proper party's identity' notwithstanding her knowledge of the existence of both parties.") (emphasis added).

version of these concepts into Rule 15(c).  But the statute of limitations "is not tolled for a

plaintiff's leisurely discovery of the full details of the alleged scheme."  Glonti v. Stevenson, No.

08 cv 8960, 2009 WL 311293, at *10 (S.D.N.Y. Feb. 6, 2009).  Adopting plaintiffs' expansive

theory of relation back would gut the policies underlying periods of limitation, because filing a

complaint would effectively become an indefinite toll of the statute of limitations against any

defendants who learn of the action and who might also be liable for the conduct alleged, under

the theory that those defendants "should have known" that the plaintiff had made a "mistake" in

not suing them as well.  Relation-back would swallow the general principles of statutes of

limitations.

I therefore conclude that plaintiffs' proposed claims against North China would not relate

back to the indirect purchasers' Amended Consolidated Complaint under Rule 15(c)(1)(C).[4]

**III. Rule 15(c)(1)(A) – State relation-back**

Federal Rule of Civil Procedure Rule 15(c)(1)(A) also permits relation back when "the

law that provides the applicable statute of limitations allows relation back."  The comment to the

version of this rule adopted in 1991 states that where state "law affords a more forgiving

principle of relation back than the one provided in [Rule 15(c)], it should be available to save the

claim."  Notes of the Advisory Committee on Rules, 1991 Amendment to Rule 15(c)(1); see

---

[4] In their reply brief, plaintiffs make passing reference to the "identity of interest" exception, citing In re Allbrand
Appliance & Television Co., Inc., 875 F.2d 1021, 1025 (2d Cir. 1989).  I will not consider an argument raised for
the first time in reply because defendants have had no opportunity to address it.  See Anghel v. Sebelius, 912 F.
Supp. 2d 4 (E.D.N.Y. 2012).  Moreover, even taking into account what I learned about the relationship between
North China and Hebei at the trial of the direct purchasers' action, there has been no showing that the interests of
these entities are "identical."  To the contrary, North China's approach at that trial was to argue that its
representative was actually acting on behalf of Hebei when he attended various price-fixing meetings, effectively
seeking to shift all liability to Hebei.  Plaintiffs merely state that Hebei and North China are related companies, who
have retained the same counsel in this action and share one officer.  Courts permitting the "identity of interest"
exception require more "substantial structural and corporate identity."  Allbrand, 875 F.2d at 1025.  A parent-
subsidiary relationship, which is actually absent here, is insufficient even when combined with shared counsel.  Id.

also, e.g., Amaya v. Garden City Irrigation, Inc., 645 F. Supp. 2d 116, 121 (E.D.N.Y. 2009).

This is one of the few provisions of the Federal Rules that expressly adopts state procedural rules

and case law.  See also Fed. R. Civ. P. 4(e)(1) and 69(a).

At first blush, this might seem a difficult inquiry, because plaintiffs' proposed second

amended complaint brings claims under the laws of 21 states.  However, the parties are in

agreement as to the procedural law in most of these states, and most have a rule, statute, or

precedent that is either the same as, derives from, or expressly follows Federal Rule 15.[5]  The

parties also agree that four of these states have expressly rejected the concept of relation-back in

"additional party" cases as opposed to "wrong party" cases.[6]  Because I have held above that the

proper construction of Rule 15(c) does not allow relation back in this case, I will presume that

any other states which have not spoken directly to the issue and have provisions similar to Rule

15 would reach the same result, as to hold otherwise would presume that these states would

reach an incorrect result.

Having reached this conclusion, the only states remaining in contention are Nebraska,

Nevada and Massachusetts.  As for Nebraska, the parties cite Zyburo v. Board of Education, 239

Neb. 162, 474 N.W. 2d 671 (1991), which allowed an "additional party" to be joined where both

parties were "one and the same" – the board of a school district and the school district itself.  But

a subsequent decision, Prochaska v. Douglas County, 260 Neb. 642, 619 N.W.2d 437 (2000),

---

[5] See Defendants' Opposition Brief at 20; Plaintiffs' Reply Brief at 9.

[6] See Hall v. State Farm Mut. Auto. Ins. Co., 215 F. App'x 423, 427 (6th Cir. 2007) (Michigan) ("'[a]lthough an amendment generally relates back to the date of the original filing if the new claim asserted arises out of the conduct, transaction, or occurrence set forth in the pleading, the relation back doctrine does not extend to the addition of new parties.'") (quoting Emp'rs Mut. Cas. Co. v. Petroleum Equip., Inc., 190 Mich. App. 57, 475 N.W. 2d 418 (Mich. 1991) (citations omitted)); see also Graney v. Caduceus Props., LLC, 91 So. 3d 220, 228 (Fla. Dist. Ct. App. 1st Dist. 2012); Woo v. Superior Court, 75 Cal. App. 4th 169, 176 (Cal. App. 4th Dist. 1999); Crossman v. Moore, 341 N.C. 185, 187, 459 S.E.2d 715, 717 (1995).

suggested that <u>Zyburo</u> should be limited to that context.  Moreover, plaintiffs concede in their

reply brief that Nebraska is effectively a "Rules" state and that state law on relation back follows

federal law.  Therefore, my holding that federal law does not permit relation back in this case

compels the conclusion that Nebraska would not either.

As to Nevada, I am not convinced of plaintiffs' position.  They rely on <u>Costello v. Casler</u>,

127 Nev. Adv. Op. 36, 254 P.3d 631 (2011), as it has language that supports their argument.

However, that was a "wrong party" case, not an "additional party" case – the plaintiff sued the

driver in an automobile accident, not knowing that he had died, and the plaintiff then sought to

substitute the representative of the estate, which is the party he should have named in the first

place.  The court's discussion about the extent of the estate representative's knowledge, as in

<u>Krupski</u>, had as its starting point the undisputed fact that the plaintiff had failed to name the

proper party, and it was only in that context that the extent of the proposed defendant's

knowledge became relevant.  I see nothing in the Nevada case law suggesting that <u>Costello</u>

would be applied to the facts here.

Massachusetts law presents a more nuanced question.  Massachusetts Rule of Civil

Procedure 15(c) provides:

> **Relation Back of Amendment.** Whenever the claim or defense asserted in the
> amended pleading arose out of the conduct, transaction, or occurrence set forth or
> attempted to be set forth in the original pleading, the amendment (including an
> amendment changing a party) relates back to the original pleading.

On its face, this counterpart to Federal Rule 15(c) would not appear to apply to "additional

party" cases.  The express reference to an amendment "changing" a party would appear to

exclude the "addition" of a party under the principle of *expressio unius est exclusio alterius*.

However, the parties before me agree, and there are several cases holding, that the

Massachusetts relation-back doctrine is substantially more liberal than its federal counterpart.

See Sigros v. Walt Disney World Co., 190 F. Supp. 2d 165, 168 (D. Mass. 2002).  Further,

although neither side has cited it to me, the Supreme Judicial Court of Massachusetts has

squarely held that Mass. R. Civ. P. 15(c) encompasses both "additional party" as well as "wrong

party" cases:

> We discern no difference in principle between permitting a plaintiff to substitute a
> defendant and permitting a plaintiff to add a defendant.  The effect in both cases is
> that a different defendant is called upon to defend the action. We hold, therefore,
> that the propriety of allowing the amendment in both cases is governed by the
> same rules.

Wadsworth v. Boston Gas Co., 352 Mass. 86, 89, 223 N.E. 2d 807, 809 (1967) (citations

omitted); accord National Lumber Co. v. LeFrancois Const. Corp., 430 Mass. 663, 671-72, 723

N.E. 2d 10, 16-17 (2000).   Wadsworth has not been overruled, which would seem to settle the

question of whether Massachusetts state law allows relation-back in "additional party" cases as

well as "wrong party" cases.[7]

That question, however, does not fully resolve the matter.  The Court retains discretion

under Massachusetts law to deny leave to amend if a defendant, whether in substitution or

addition, would be unduly prejudiced.  See, e.g., Herrick v. Essex Reg'l Ret. Bd., 68 Mass. App.

---

[7] However, I will note that the court in Tabb v. Journey Freight Internations, 584 F. Supp. 2d 334, 342-44 (D. Mass. 2008), held that Wadsworth should be limited to its facts, and that the relation-back doctrine is unavailable in "additional party" cases.  Although, as noted above, I believe that Wadsworth is inconsistent with the language of Mass. R. Civ. P. 15, I disagree with Tabb.  First, contrary to the court in Tabb, I see nothing anomalous about Wadsworth, which has been followed in Massachusetts.  Second, as authority, Tabb cited another Massachusetts federal district court decision, Burns v. Turner Constr. Co., 265 F. Supp. 768, 770 (D. Mass. 1967), which was decided about six weeks after Wadsworth yet failed to cite it.  Third, Tabb effectively held that the deferral to state law in Fed. R. Civ. P. 15(c)(1)(A) does not include the state counterpart to Rule 15.  I do not see why that would be the case.  As noted, the drafters of Federal Rule 15(c) intended to permit plaintiffs to rely upon more generous state relation back policies, and it should make no difference whether the state rule is a product of case law, statute, or a counterpart to Rule 15.  See Hogan, 738 F.3d at 518 ("Rule 15(c)(1)(A) instructs courts . . . to look to the entire body of limitations law that provides the applicable statute of limitations.") (emphasis in original).

13

Ct. 187, 191-92, 861 N.E. 2d 32, 36-37 (2007).  North China points to Krupski's recognition that "[a] prospective defendant who legitimately believed that the limitations period had passed without any attempt to sue him has a strong interest in repose." 130 S. Ct. at 2494.  It amplifies on that by referring to the expense of defense.

This is not enough to make the prejudice to North China "undue."  There is no suggestion that it will have any more difficulty defending this limited Massachusetts claim than it would have had it been timely sued.  Nor is there any indication that evidence has been lost or rendered less accessible.  Although not required to make a showing of undue prejudice, the possibility of such conditions is one of the reasons why Krupski found that the interest in repose is strong.  They do not appear to be present here, nor is there any indication of prejudice beyond costs that North China would have incurred even if it was sued in the original complaint.  I therefore cannot find that North China has met its burden of showing undue prejudice.

I recognize the anomaly in allowing the Massachusetts claim to go forward against North China while finding that the claims of plaintiffs from other states are time-barred.  That result, however, is the unavoidable outcome of our federal system which requires me to apply the law of 21 states, all of which except one would preclude this claim.

## CONCLUSION

Plaintiffs' motion to amend is denied to the extent that it would add claims against North China under the laws of any state other than Massachusetts, and granted in all other respects. The Second Amended Consolidated Complaint, as modified consistent with this decision, shall be filed within 14 days.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
        January 31, 2014